UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ERIK COLLINS,

        Plaintiff,        CASE NO. 17-CV-10898
                        HON. GEORGE CARAM STEEH
v.

JOHN FERGUSON and
JEFFREY RUCINSKI,

        Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 9)

In this 42 U.S.C. § 1983 excessive force suit, Plaintiff Erik Collins

alleges Defendant Michigan state troopers, John Ferguson and Jeffrey

Rucinski, struck him with their police cruiser, tased him, and forced him to

stand and walk on his injured left leg after he dislocated his hip and

fractured his left acetabulum requiring emergency surgery and traction. In

lieu of an Answer and prior to any discovery, Defendants filed a motion for

summary judgment, arguing that they are entitled to qualified immunity

based on their police cruiser's dash-cam video of the pursuit and incident in

question, which they claim shows Collins colliding with the police cruiser

two seconds after their vehicle came to a stop. Defendants' theory of the

case is that Collins ran into their parked vehicle and is responsible for his own injuries. In addition to his § 1983 excessive force claim, Collins alleges a state law claim of gross negligence against the officers. Defendants argue Collins' gross negligence claim should be dismissed as the factual allegations pled support an intentional tort claim only. For the reasons set forth below, Defendants' motion for summary judgment shall be denied as to the § 1983 claim for excessive force, but shall be granted as to the gross negligence claim which shall be dismissed.

## I. Factual Background

The court construes the factual allegations in the light most favorable to the nonmoving party, here, Collins. On April 1, 2016, Collins, who was 28 years old, was riding his minibike, a motorized bike which is considerably smaller than a motorcycle, the wrong way on the one-way street of Norwood in Detroit. There were no moving cars in his vicinity. Officers Rucinski and Ferguson, followed Collins in their police cruiser, driven by Officer Rucinski, shouting for him to pull over. Collins ignored the police requests that he stop and continued down the street on his minibike. The police gave pursuit following Collins closely and driving across sidewalks and the lawns of neighboring homes. After a short while, Collins ditched his bike and proceeded on foot. Officer Ferguson exited the police

vehicle and pursued Collins on foot. What happened next is in dispute.

Officer Rucinski continued to pursue Collins with his patrol car, eventually

stopping on either the driveway or lawn of one of the neighboring

residences, and then rolling backwards towards the street.

Collins claims the police car struck him while moving forward, causing

excruciating pain to his leg and hip, and causing him to fall to the ground.

Collins claims the vehicle then ran over his left hip when the vehicle

reversed. Defendants, on the other hand, claim that Collins himself ran into

the police vehicle, and that he alone is responsible for the impact.

Defendants claim the patrol car's dash-cam video supports this theory,

claiming that the video shows their vehicle coming to a stop two seconds

before a loud sound is heard, allegedly the sound of Collins running into

their car. The dash-cam video does not show Collins at the point of impact,

but does partially depict him lying on the ground to the front left of the

police cruiser. The court has carefully reviewed the dash-cam video. At

the time of the impact, the police sirens are blaring, and it was quite difficult

for the court to discern the alleged sound of impact. The dash-cam video is

far from the indisputable proof the Defendants assert it to be.

After Collins fell to the ground, Officer Rucinski yelled at him to get on

the ground. Collins can be heard on the dash-cam video moaning and

yelling in pain.  Officer Ferguson then tased Collins.  Defendants claim the taser was necessary because Collins would not give up his hands for cuffing, and that the taser was ineffective because Collins wore heavy clothing and a back brace.

In his affidavit, Collins asserts that both Defendants then pinned him to the ground, put their full weight on him, and handcuffed him.  These events are not depicted in the dash-cam video.  Collins was arrested for fleeing and eluding and resisting and obstructing a police officer. Defendants then ordered Collins to stand and demanded to know if he had a weapon on him.  Collins claims he was unable to stand because of the excruciating pain in his leg and begged for an ambulance which Defendants denied.  While on the ground, Collins can be heard on the dash-cam video crying out, "Why'd you run me over with the car?  Oh God help!"  (Doc. 9, Ex. 2 at 3:12-15).  Collins claims that Officers Ferguson and Rucinski forced him to stand, shoved him into their police vehicle, and drove him to Detroit Receiving Hospital where they insisted he walk on his injured leg despite his protests of severe pain.  Once Collins reached the door of the Emergency Room, Defendants requested a wheel chair for him.

Once at the hospital, Collins was placed in an examination room, and Defendants remained in the room with him.  While in the room, Defendants

questioned Collins. Officer Rucinski left the room for a while, during which time Collins was treated with strong medicine to relax him and dull the pain, including ketamine which can cause sedation and confusion, to prepare him for the procedure of returning his dislocated hip to its socket and to put him in traction. When Officer Rucinski returned to the room, Collins was in traction and under the influence of strong medication. Officer Rucinski asked Collins to sign and initial a piece of paper which Collins claims he represented was related to his medical bill and treatment. Collins signed the document without reading it. The statement was signed at 8:40 p.m. and contained the following statements which Collins initialed:

Q: ARE YOU UNDER THE INFLUENCE OF ANY DRUGS OR ALCOHOL?

A: NO

Q: HOW DID YOU INJURY YOUR HIP?

A: I WAS RUNNING, SLID ON MUD, AND STRUCK THE FRONT DRIVER TIRE OF THE PATROL CAR WITH MY LEFT HIP.

Q: DID ANTHING [sic] HAPPEN TO INJURE YOUR HIP FURTHER?

A: NO, YOU GUYS HANDLED ME PRETTY WELL.

Q: DID YOU FEEL LIKE I WAS TRYING TO INJURE YOU?

A: NO, YOU HAD LOVE, DID NOT EVEN PULL A

GUN ON ME, YOU CARED.

(Doc. 9-2 at PgID 56).

Collins was diagnosed with a left hip dislocation with a comminuted fracture, which means a break of the bone into two or more parts, of the left acetabulum, which is the socket of the hipbone into which the head of the femur fits. On April 2, 2016, Collins underwent surgery for a left fracture dislocation acetabulum.

Although Defendants claim Collins told medical personnel he himself ran into the police vehicle, the medical records paint a different picture. One treating physician noted that Collins claimed the vehicle hit him and suggested that such a scenario was consistent with the severity of Collins' injury. In particular, the physician's treating note first states, "police said he ran into his partner's car" and later the note said, "now the patient's story changes, he states he was actually hit by a car. When he first came in, the police and the patient stated that he ran into the car when he was running away from the police and the car stopped, but it turned out, as we suspected, there might be a higher impact injury." (Doc. 14-4 at PgID 153). Numerous places in the medical records state that Collins reported that he was struck and run over by the police vehicle. Collins was treated in the hospital for six days and was then released to the Rehabilitation Institute of

Michigan for an extensive period of rehabilitation.

In opposition to Defendants' motion for summary judgment, Collins relies on a medical expert affidavit by a board certified orthopedic surgeon who states that the "type of injuries sustained by Mr. Collins, frequently occur as a result of trauma, such as motor vehicle accidents, and are very painful." (Doc. 14-8 at ¶ 12, PgID 211). He further opines that "[b]ased upon a reasonable degree of medical certainty, it is my professional opinion that Mr. Erik Collins could have sustained a hip fracture from contact with a motor vehicle as a result of the troopers' vehicle causing him to suddenly alter his direction." *Id.* at ¶ 13.

On January 19, 2017, Collins pled guilty to attempting to assault, resist, or obstruct a police officer in violation of Mich. Comp. Laws § 750.81d, and fourth-degree fleeing and eluding in violation of Mich. Comp. Laws § 257.602a(2) and was sentenced to two years of probation. (Doc. 16-3, PgID 236).

On March 22, 2017, Collins filed his two-count Complaint against Officers Ferguson and Rucinski for (1) excessive force and unreasonable search and seizure in violation of his Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, and (2) gross negligence. Now before the court is Defendants' joint motion for summary judgment on the grounds

that they are entitled to qualified immunity which shields them from liability under § 1983, and that Collins' state law claim for gross negligence is not cognizable under Michigan law as his claim is solely for an intentional tort.

## II. Standard of Law

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing*

*Anderson*, 477 U.S. at 252).

## III. Analysis

## A.    42 U.S.C. § 1983

The court first analyzes whether Defendants are entitled to summary judgment on Collins' excessive force claim brought under § 1983. Defendants argue qualified immunity shields them from liability under § 1983.  Qualified immunity "'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Stanton v. Sims*, ___ U.S. ___, 134 S. Ct. 3, 4–5 (2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  It protects all officers except "the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citation and internal quotation marks omitted).  As the Supreme Court has explained, "[t]his accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued."  *Id.* (citation omitted).  Indeed, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments. . . ."  *Stanton*, 134 S. Ct. at 5 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quotation marks omitted)).

The court employs a two-step inquiry in deciding qualified immunity questions. *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015). "'First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation? These prongs need not be considered sequentially.'" *Id.* (citation omitted).

Whether police used excessive force is judged under an objective "reasonableness" standard. *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015). Where an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures of the person.'" *Graham v. Connor*, 490 U.S. 386, 394 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citation omitted). "The assessment is fact-specific, based on the totality of the circumstances, and 'pay[s] particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade by flight." *Baynes*, 799 F.3d

at 607(internal quotation marks and citations omitted).

## 1.    Constitutional Violation

Here, viewing the evidence in a light most favorable to Collins, the individual police officers are not entitled to qualified immunity because genuine issues of material fact exist as to whether the officers used excessive force.  Defendants argue they are entitled to qualified immunity based on the dash-cam video and Collins' signed statement, given at the hospital, that he slipped on the mud and ran into the police cruiser himself. In this case, the evidence is conflicting as to the amount of force used.  The medical records evidence that Collins suffered a very serious injury involving dislocation of his hip and a comminuted fracture, of the left acetabulum, which required traction, surgery, six days of hospitalization, and a long period of recovery in a rehabilitation center.  Collins' treating physician noted that although police first told him that Collins had ran into the police car, the patient later told him he had been hit by the police car, which "it turned out, as we suspected, there might be a higher impact injury."  (Doc. 14-4 at PgID 153).  In fact, numerous notations are set forth in the medical records stating that Collins reported that he was struck by the police cruiser which ran over his left leg.  (Doc. 14-4).  Given the severity of Collins' injuries, it appears plausible that the police cruiser struck

him rather than he merely ran into the vehicle himself.

Significantly, once Collins was lying on the ground moaning in pain, he is heard to ask, "Why did you run me over with the car? Oh God help!" (Doc. 9, Ex. 2 at 3:13-15). Defendants argue the dash-cam video supports their theory that Collins ran into their vehicle, but the court having reviewed the dash-cam video does not find it to be conclusive. For one, the video does not actually depict the impact. Defendants argue that the time of the collision can be extrapolated from the alleged sound of impact which allegedly took place two seconds after the police cruiser is depicted coming to a stop. However, sirens are blaring at the alleged time of impact and it is difficult for the court to make out the sounds claimed to be dispositive. Also, the vehicle is depicted rolling backwards close to the time of alleged impact. According to Collins' affidavit, the front left bumper of the vehicle struck him while the vehicle was still in motion and that after he fell to the ground, the vehicle rolled backwards and ran over his left hip. (Doc. 14-5 at ¶¶ 14-16, PgID 192). Given this competing evidence and the lack of clarity in the dash-cam video, the court cannot conclude that the police cruiser did not strike Collins.

In addition to evidence that Defendants may have struck Collins with their police cruiser, Collins' excessive force claim is also premised on the

fact that Defendant Ferguson tased him while he was on the ground.

Officer Ferguson argues that the tasing was appropriate because Collins

was resisting arrest, but this factual issue remains in dispute and cannot be

resolved at this early juncture.  The dash-cam video does not show the

tasing or the handcuffing, and thus, it is not dispositive.  Collins also argues

the force used was excessive because the officers pinned him to the

ground with their full weight before handcuffing him, and forced him to

stand and walk on his severely injured left leg to the patrol car and later to

the emergency room despite his continuing protests of extreme and

excruciating pain and his requests for an ambulance.  Given these disputed

facts, Defendants have failed to establish that the amount of force used

was not excessive, and thus, they are not entitled to qualified immunity.

Defendants claim the statement Collins signed at the hospital, that he

slipped on the mud and ran into the police cruiser, is dispositive and

requires summary judgment in their favor.  The statement is not dispositive

for several reasons.  First, it is undisputed that Collins was under the

influence of strong medications for pain at the time he signed the form.

Second, the statement is contradicted by Collins' statement made at the

time of the collision while he was in excruciating pain, conflicts with his

reports to treating physicians at the hospital that the patrol car struck him,

and is inconsistent with medical evidence of an extremely severe injury; such is arguably unlikely if Collins merely ran into the vehicle himself.

Lastly, it is significant that Collins was unarmed and never posed a threat to the officers or to any others. The police pursuit began because Collins was riding his minibike the wrong way down a one-way street on which there were no moving vehicles. The court considers the fact that Collins refused to stop his minibike when ordered to do so, and fled from the officers by foot after ditching his bike, in reaching its decision here. These facts do not lead to the conclusion as a matter of law that the amount of force used was reasonable. In sum, questions of fact exist over whether the force used was reasonable, such that Defendants are not entitled to qualified immunity.

## 2.    Clearly Established Right

In determining whether the Defendants are entitled to qualified immunity, the next question is whether a constitutional right was clearly established. The Sixth Circuit has stated that "[t]he key determination is whether a defendant moving for summary judgment on qualified immunity grounds was on notice that his alleged actions were unconstitutional." *Grawey v. Drury*, 567 F.3d 302, 313 (6th Cir. 2009). The Sixth Circuit has emphasized the Supreme Court's admonition that the "'contours of the right

must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Stamm v. Miller*, 657 F. App'x 492, 496 (6th Cir. 2016) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The specific action in question need not have been previously held to be unlawful, but the unlawfulness of the act must be apparent in light of pre-existing law. *Id.* The Sixth Circuit has held that "it is clearly established law that an officer may not use his police vehicle to intentionally hit a motorcycle unless the suspect on the motorcycle poses a threat to the officer or others." *Id.* at 496. In this case, the evidence viewed in the light most favorable to Collins, supports a finding that there is at least a genuine issue of fact as to whether Defendants violated a clearly established right. If it is unlawful for the police to strike an individual on a motorcycle, who is posing no threat to the officers or others, with their police vehicle, clearly by implication, it is unlawful to strike a similarly situated individual on foot with a patrol car.

Also, in terms of the alleged excessive force used in tasering, taking the facts in the light most favorable to Collins, such a claim may amount to a violation of a clearly established right. The Sixth Circuit has held that "[t]he tasing of a suspect without warning is, at the very least, an additional factor useful in determining whether an officer violated a suspect's Fourth

Amendment right to be free of excessive force." *Baker v. Union Twp.*, 587 F. App'x 229, 236 (6th Cir. 2014). The Sixth Circuit has squarely held that "[w]hen a suspect actively resists arrest, the police can use a taser (or a knee strike) to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot." *Rudlaff*, 791 F.3d at 642. The Sixth Circuit has also held that the use of a taser on a non-resistant person is unreasonable "absent some compelling justification — such as the potential escape of a dangerous criminal or the threat of immediate harm." *Kijowski v. City of Niles*, 372 F. App'x 595, 600 (6th Cir. 2010).

The court next considers Collins' claims that Defendants used excessive force when they pinned him down and handcuffed him, forced him to stand on his injured leg, and shoved him into the patrol car. The Sixth Circuit has ruled that "the use of force . . . on a suspect who has been subdued is unreasonable and a violation of a clearly established right." *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012). In sum, a genuine issue of material fact exists as to whether these Defendants used excessive force in violation of Collins' clearly established constitutional rights. Accordingly, Defendants' motion for summary judgment on the § 1983 claim is DENIED.

**B.     Gross Negligence**

Collins also pleads as a separate cause of action, "gross negligence." But gross negligence is not a standalone cause of action under Michigan law.  Under Michigan's Tort Liability Act, a governmental employee is not liable for personal injuries sounding in tort provided the employee's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage."  Mich. Comp. Laws § 691.1407(2)(c).  Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  *Id.* at § 691.1407(8)(a).  A gross negligence claim cannot be maintained as a separate cause of action, but is only relevant in determining whether a governmental actor is entitled to immunity for negligent tort liability.  *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011).

In *Bletz*, the Sixth Circuit found that the district court erred in not dismissing plaintiff's state-law gross negligence claim, because the only claim cognizable for the sort of excessive force claims at issue, would be for assault and battery.  *Id.* at 756.  In that case, the police shot and killed plaintiff's husband when the decedent refused to drop his weapon when the police entered his home to allow decedent's son, whom they were arresting on a bench warrant, to return inside the home to gather his shoes.  *Id.* at

748.  Under those circumstances, the Sixth Circuit ruled the analysis was whether defendant had used excessive force which was cognizable only as a claim for assault and battery.  *Id.* at 756.

Similarly, in *Livermore v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007), the court reversed the district court's denial of defendant's motion for summary judgment of her claim for gross negligence.  In that case, plaintiff argued the defendant officer breached a duty of care owed to the decedent by shooting and killing him.  *Id.*  The Sixth Circuit stated that plaintiff's gross negligence claim "is undoubtedly premised on the intentional tort of battery" and observed that "Michigan courts have consistently 'rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence.'"  *Id.* (quoting *Vanvorous v. Burmeister*, 262 Mich. App. 467 (2004), *overruled on other grounds by*, *Odom v. Wayne Cty.*, 482 Mich. 459 (2008)).

The rationale behind the rule that a gross negligence claim cannot lie in certain circumstances where the police conduct at issue forms the basis for an intentional tort, is explained by an understanding of the elements of a negligence claim.  A negligence claim requires four elements: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached the duty, (3) the defendant's breach of the duty proximately caused the plaintiff's

injuries, and (4) the plaintiff suffered damages. *Hunley v. DuPont Auto.*, 341 F.3d 491, 496 (6th Cir. 2003) (citing *Case v. Consumers Power Co.*, 463 Mich. 1, 7 & n.6 (2000)). The question of duty is ordinarily a question of law for the court to decide. *Jackson v. Oliver*, 204 Mich. App. 122, 125 (1994). To determine "whether the relationship between the parties is sufficient to establish a duty, the proper inquiry is whether the defendant is under any obligation for the benefit of the particular plaintiff." *Maiden v. Rozwood*, 461 Mich. 109, 132 (1999) (internal quotation marks and citations omitted). This involves an analysis of "whether the relationship of the parties is of a sort that a legal obligation should be imposed on one for the benefit of another." *Id.*

Whether or not an individual owes a duty to the plaintiff involves important policy decisions. For example, the Michigan Supreme Court has held that police owe a duty not to act negligently to innocent bystanders of a police car chase, but do not owe a similar duty to a fleeing wrongdoer. *Robinson v. City of Detroit*, 462 Mich. 439, 450-51 (2000). The duty owed to the fleeing wrongdoer would not be a negligence standard, but would involve the question of whether the amount of force used was excessive under the totality of the circumstances. As the Michigan Court of Appeals explained in *Jackson*, "[a] criminal suspect who defies police authority does

not thereby trigger some enhanced duty or obligation on the part of the police.  The only limitation on the part of the police is the obligation not to use excessive force when apprehending or attempting to apprehend the suspect."  204 Mich. App. at 127.  In other words, where an excessive force claim is brought against a police officer for an offensive, intentional touching arising from a situation where the plaintiff defied police authority, the plaintiff cannot ordinarily also recover under a negligence theory.  This is so because the duty at stake is the duty not to use excessive force, which is properly analyzed under § 1983 or the analogous assault and battery claim, and not the more lenient standard of reasonable care which forms the basis of an ordinary negligence claim.

In *VanVorous*, *supra*, the court ruled that plaintiff's gross negligence claim was not cognizable because her claim was fully premised on her claim of excessive force and Michigan courts have "rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence."  262 Mich. App. at 483.  In that case, plaintiff sued on behalf of the decedent who was shot by police after an extended car chase.  *Id.* at 474.  Plaintiff's § 1983 claim was litigated in federal district court.  *Id.* at 469.  The district court found that the officers were entitled to qualified immunity because they had acted reasonably when they shot the decedent

after an extended car chase where the decedent had placed one of the officers in dangerous peril, and dismissed the supplemental state law claims of assault and battery, intentional infliction of emotional distress, and gross negligence without prejudice. *Id.* at 474-76. Plaintiff refiled the state law claims in state court. *Id.* at 476. In her state gross negligence claim, plaintiff alleged that defendants breached a duty of care owed to the decedent by using excessive force or in failing to follow police procedures in apprehending the decedent. *Id.* Because the duty of care at stake was the duty not to use excessive force, the Michigan Court of Appeals held that the gross negligence claim "disguises her true claim of excessive force," which having already been litigated in federal court, required dismissal. *Id.* at 484.

Similarly, in *Smith v. Stolberg*, 231 Mich. App. 256, 258-59 (1998), where an attorney shoved the plaintiff into a bench during a court appearance, the court found that no negligence claim would lie because the conduct in dispute involved an intentional, offensive touching for which the proper cause of action is battery. Just as in *VanVorous* and *Smith*, Collins' gross negligence claim is based on the theory that Defendants breached their duty not to use excessive force. Such a claim is strictly an intentional tort claim of assault and battery and is not cognizable as a gross

negligence claim.

Collins argues that *Bell v. Porter*, 739 F. Supp. 2d 1005 (E.D. Mich. 2010) requires that the court reach the opposite conclusion here. In *Porter*, a dispute arose over an incident on a city bus wherein plaintiff, a double amputee with two prosthetic legs, argued with a bus driver who had ejected another passenger. *Id.* at 1009. A police officer responded to the scene and pushed plaintiff causing her to fall backwards. *Id.* Plaintiff sued for excessive force under § 1983 and also brought state law claims of assault and battery and gross negligence. The officer sought summary judgment on the gross negligence claim arguing that the claim was subsumed into her assault and battery claim. *Id.* at 1014.

The district court disagreed, finding that plaintiff had alleged that the officer had breached duties independent of the assault and battery claim, including the duty to "treat plaintiff with respect and dignity as may be consistent with her security, and legitimate law enforcement activity," "[t]o avoid foreseeable injury to plaintiff, while investigating or pursuing legitimate police activity," and "[t]o avoid conduct or a failure to act that is so reckless that it demonstrates a substantial lack of concern for whether an injury will result." *Id.* at 1015. Notably, in that case, plaintiff was not a suspected wrongdoer and had not defied police authority.

In this case, by contrast, Collins premises his gross negligence claim solely on Defendants' duty not to use excessive force. In his response brief, he argues that Defendants may be liable for breaching the same duties recognized in *Porter*. Problematically, Collins did not plead the existence of any such duties in his Complaint. More importantly, the court is not prepared to recognize the existence of those duties under the circumstances presented here where the police chased Collins, sirens blaring, for fleeing and eluding as he raced his motorized bike the wrong way down a one-way street. The injuries at issue resulted when Collins impacted the police cruiser. Under these circumstances involving an alleged intentional offensive touching, the officers' conduct is properly analyzed in the context of whether the force used was excessive under § 1983 or the analogous intentional tort of assault and battery.

In reaching its decision here, the court is also guided by the Michigan Court of Appeals decision in *Sudul v. City of Hamtramck*, 221 Mich. App. 455, 458-62 (1997), where the court found it was error to instruct the jury that an assault and battery claim could be proven by gross negligence. Accordingly, Defendants' motion for summary judgment on the gross negligence claim is GRANTED.

## IV. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment (Doc. 9) is GRANTED IN PART in that the gross negligence claim pled in Count II is DISMISSED WITH PREJUDICE and is DENIED IN PART in that the § 1983 claim pled in Count I remains viable.

**IT IS SO ORDERED.**

Dated: October 3, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 3, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---